RUFFNER (DAUSMAN & DRUMMOND TOBACCO CO. v.). See Case No. 3,585.

## Case No. 12,114.
RUGG v. HAINES.

[1 MacA. Pat. Cas. 420.]

Circuit Court, District of Columbia. Oct., 1855.

PATENTS—APPLICATIONS—PRIOR USE AND SALE.

[Under Act 1839, § 7 (5 Stat. 354), the use and sale by the inventor of a machine embodying the substance of his invention, more than two years before filing his application, bars his right to a patent.]

[This was an appeal by George H. Rugg from a decision of the commissioner of patents, in interference, awarding priority to Jonathan Haines in respect to an invention relating to harvesting machines. The interference was between applications by both parties for a reissue. The application of Rugg was filed February 22, 1855, for a reissue of original patent No. 9,005, issued June 8, 1852; that of Haines was filed in 1848, for a reissue of original patent No. 6,254, granted March 27, 1849, and resulted in reissue patent No. 331, dated November 6, 1855.]

John F. Clark, for appellant.

MORSELL, Circuit Judge. The commissioner, on the 11th of May, 1855, decided the question of invention in favor of the said Jonathan Haines. In the reasons for his decision, he says: "The interference in this case arises on an application for a reissue by each of the parties. The device now claimed by both is fully described by each in his original application. Haines' application was dated in 1848; that of Rugg in 1852. To show priority of invention, however, Rugg proves that in 1846 he had so constructed his harvester that the cutting apparatus could be elevated and depressed, and thus made to run at different heights above the ground. Now, the subject-matter of the interference in this case is an apparatus by which the person who conducts the machine can, by means of a lever, raise or lower the cutting apparatus at pleasure without stopping the machine. Rugg does not show that he had effected this contrivance in 1846, nor at any time prior to the filing of his application in 1852. It is true he may be said to have made a beginning towards it by so contriving his machine that by stopping it and procuring a fence rail or other lever he could adjust the cutter to any desirable permanent height; but that is not the subject of his present claim. Priority of invention will therefore be awarded to the said Haines, and a patent will issue." From this decision the said George W. Rugg hath appealed. The reason for the appeal, as far as understood, is that the commissioner erred in overlooking the points of invention claimed in his application for a reissue, which was that the invention was incomplete without the hinging of the reach or pole to the frame of the machine. The commissioner has laid before the judge the reasons of his decision in writing, with the original papers, the reason of appeal, and the evidence in the cause. Whereupon, notice being duly given to the parties of the time and place of hearing, the said parties by their respective attorneys filed their respective arguments in writing and submitted the case for the decision of the judge.

The point which first claims my notice is that urged in the argument of the appellee's counsel, "that Haines, the appellee, takes the ground that Rugg, the appellant, has made, used, and sold the machine for which he is now contending some six years before he applied for a patent, and that for that reason he is cut off by the seventh section of the act of 1839, as he has proven himself that the thing which he claims was in public use and on sale with the applicant's consent and allowance prior to his application for six or seven years."

The testimony of Bronson Murray, a witness examined on the part of the appellant, is as follows: The second interrogatory put to said witness by said appellant's counsel is: "Did you ever use a harvester made by George H. Rugg, of Otteron? If yea, when did you first use it?" Answer: "I bought one of him, reputed to be made by him, I think, in the spring of 1848, and the same was in use on my farm for some years; it was an old machine when I bought it." The third interrogatory: "Do you recollect whether or not the tongue or reach was hinged in the main frame of the machine which carries the cutter-bar, so as to render it capable of raising or lowering the cutter-bar with a lever?" Answer: "It was." The fourth interrogatory: "What was the usual way of raising or lowering the cutter-bar, and how was it held at the point required?" Answer: "By using a rail as a lever, and secured by a chain having a hook." Fifth interrogatory: "Was this machine you speak of capable of having a lever permanently attached to it, as a part thereof, for the purpose of raising and lowering the cutter-bar?" Answer: "Yes."

The application for the patent in this case was filed on the 22d of February, 1855. The seventh section of the act of 1839 is: "That

every person or corporation who has or shall have purchased or constructed any newly-invented machine, manufacture, or composition of matter prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture, or composition of matter so made or purchased without liability therefor to the inventor or any other person interested in such invention; and no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent." Such being the law and the fact, it can require no comment to show that the appellant is barred of his right, whatever it was, to a patent in this case. I think, therefore, that the commissioner was correct in his decision, and that the same ought to be affirmed.